IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROUND ROCK RESEARCH LLC,  :<br>  Plaintiff,  :<br>   :<br>v.  :<br>   :<br>ACER, INC., ACER AMERICA  :<br>CORPORATION, ACER AMERICAN  :<br>HOLDINGS, INC., and GATEWAY,  :<br>INC.,  :<br>  Defendants.  :<br>_____  :<br>ROUND ROCK RESEARCH LLC,  :<br>  Plaintiff,  :<br>   :<br>v.  :<br>   :<br>LENOVO HOLDING CO., INC.,  :<br>and LENOVO (UNITED STATES)  :<br>INC.,  :<br>  Defendants.  :  | Civil Action No. 11-977-RGA<br><br><br><br><br><br><br><br><br><br>Civil Action No. 11-1011-RGA |

## ORDER

The Court having considered the Parties' Amended Joint Claim Construction Brief (No. 11-977, D.I. 95; No. 11-1011, D.I. 81), appendices (No. 11-977, D.I. 72; No. 11-1011, D.I. 61), updated claim construction chart (No. 11-977, D.I. 89; No. 11-1011, D.I. 78), submission narrowing the claim terms (No. 11-977, D.I. 86; No. 11-1011, D.I. 76), and oral argument on May 29, 2013 (No. 11-977, D.I. 97; No. 11-1011, D.I. 83), **IT IS HEREBY ORDERED** that the terms below, as used in the indicated patents, are construed as follows:

### I. U.S. Patent No. 5,255,109

A. *"heat spreading means"*

The term "heat spreading means" is a means-plus-function term. Plaintiff argues that the

presumption that the term "heat spreading *means*" is a means-plus-function term is overcome by structure recited in the dependent claims, even though the term appears in the independent claim. This theory that dependent claims can provide enough structure for a term in an independent claim to overcome that presumption is not supported by any tenet of claim construction. "The claim itself" must recite the structure to overcome the presumption. *Net MoneyIN, Inc. v. Verisign, Inc.* 545 F.3d 1359, 1366 (Fed. Cir. 2008); *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1319-20 (Fed. Cir. 2004); *e.g., Air Turbine Tech., Inc. v. Atlas Copco AB*, 295 F.Supp. 2d 1327, 1332 (S.D. Fla. 2003).

The claimed function is "to spread heat evenly over and about the entire surface of the LCD screen display." This function is disclosed in the specification at col.1 ll.29-33, 49-54. During prosecution, the patentee noted, "The specification is very clear that this is a situation where heat must be spread around evenly on the back of an LCD display," and that, "The basic teaching of the whole invention, that and [sic] spreading heat evenly across the back of the screen, is not discussed or recognized in any of the cited art." (D.I. 61-16 at 1242, 1244).

The disclosed corresponding structures are: "1) a multilayered structure composed of a plate of aluminum or other metal such as copper, tin or steel, and a sheet of mica, asbestos, paper, cloth, fiberglass, foam, rubber, or polymer; 2) only aluminum; or 3) only copper." Col.1 ll.49-54, 63-68; col.2, ll.19-34. Plaintiff's proffered additional structural category of "other material which can conduct heat away from or dissipate heat to the LCD display," while present in the specification, is not sufficiently specific to expand the scope of the claim beyond the disclosed examples. *See Nomos Corp. v. BrainLAB, Inc.*, 195 F.Supp.2d 606, 614 (D. Del. 2002); col.2 ll.19-34.

B. *"insulating means"*

The term "insulating means" is a means-plus-function term. Plaintiff argues that the presumption that the term "insulating *means*" is a means-plus-function term is overcome by structure recited in the dependent claims, even though the term appears in the independent claim. This theory that dependent claims can provide enough structure for a term in an independent claim to overcome that presumption is not supported by any tenet of claim construction. "The claim itself" must recite the structure to overcome the presumption. *Net MoneyIN, Inc. v. Verisign, Inc.* 545 F.3d 1359, 1366 (Fed. Cir. 2008); *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1319-20 (Fed. Cir. 2004); *e.g., Air Turbine Tech., Inc. v. Atlas Copco AB*, 295 F.Supp. 2d 1327, 1332 (S.D. Fla. 2003).

The parties agree the claimed function is "insulating." The claimed structure is "mica, fiberglass, or polymer." The recited structures at col.2 ll.30-34, which Plaintiff proffers as additional structures for the claimed insulating means, are linked to a heat dissipating function, not an insulating function. The structure must be clearly linked to the function in order to correspond to the function. *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424-25 (Fed. Cir. 1997). The only structures linked to an insulating function are mica, fiberglass, and polymer, in claims 9-11 and 18-20. Col.3 ll.17-22; col.3 l.45 - col.4 l.4.

**II. U.S. Patent No. 5,787,174**

A. *"the first integrated circuit has a primary function different from radio frequency identification"*

The term "the first integrated circuit has a primary function different from radio frequency identification" is construed to mean "a first integrated circuit, separate from the radio

3

frequency identification circuit, with a primary function different from radio frequency identification." The specification and prosecution history distinguish the radio frequency identification circuit and the first integrated circuit, indicating that while the first integrated circuit and radio frequency identification circuit may be on the same die, they are two separate circuits. Col.2 l.66 - col.3 l.11; (No. 11-1011, D.I. 61-16 at 1266, 1273).

B. *"radio frequency identification circuit"*

The term "radio frequency identification circuit" is construed to mean "a second circuit, separate from the first integrated circuit, with a primary purpose of radio frequency identification." The specification and prosecution history indicate that while the first integrated circuit and radio frequency identification circuit may be on the same die, they are two separate circuits. Col.2 l.66 - col.3 l.11; (No. 11-1011, D.I. 61-16 at 1266, 1273).

C. *"conveying the stored identification number after the receiver circuit receives an RF interrogation signal"*

The term "conveying the stored identification number after the receiver circuit receives an RF interrogation signal" does not require construction. Defendants' proposed additional limitation that the receiver circuit respond "only" after receiving an interrogation signal is not supported by the specification. The specification discloses responses after receiving an interrogation signal, and benefits to responding after such a signal (*e.g.*, conserving energy or battery life). Abst.; col.2 ll.1-4, 11-21, 30-39; col.4 ll.59-65; col.6 ll.16-35. The specification also incorporates by reference U.S. Patent No. 4,857,893, which discloses a transponder with a hybrid battery that "allows the device to be converted into a self-powered beacon device that periodically transmits its identifying encoded data word without the need for the presence of a

4

carrier signal" – *i.e.*, to convey the stored identification without receiving the interrogation signal. Col.6 ll.46-49 (incorporating by reference U.S. Patent No. 4,857,893; *see* '893 Patent, col.4 ll.32-36). It is therefore not proper to limit this term to a response occurring "only" after receiving an interrogation signal, as to do so would exclude the embodiment that can periodically transmit the response. *See Hyperphrase Techs., LLC v. Google, Inc.*, 260 Fed. App'x. 274 (Fed. Cir. 2007) ("A claim construction that excludes an embodiment of the relevant claim(s) is typically incorrect.").

Further, the addition of "only" is not helpful to the jury.[1] The claim term covers conveying the stored information after the receiver receives the RF interrogation signal. Conveying the stored information without an interrogation signal is not covered by the claim term regardless of whether "only" is added, as that conveyance is not "after" the interrogation signal.

### III. U.S. Patent No. 5,991,843

A. *"computer bus"*

The term "computer bus" is construed to mean "a set of hardware lines - wires - used for data transfer among the components of a computer system." Contrary to Plaintiff's argument, the patentee did not clearly express an intent to redefine the term at col.1 ll.22-24, but rather, described an attribute of a computer bus. *See Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012). In the alternative, Plaintiff conceded that plain meaning was appropriate, but offered no evidence of what the plain meaning should be. The only evidence of

---

[1] It does not appear that Defendants are arguing for "only" as being clarifying. (No. 11-1011, D.I. 83 at 67).

plain meaning before the Court is Defendants' dictionary definition from the 1994 Microsoft Computer Dictionary, which provides the construction adopted here.

### IV. U.S. Patent No. 6,845,053

A. *"adjustable current consumption being set to the low power mode"*

The term "adjustable current consumption being set to the low power mode" does not require construction. Plaintiff's proposed alternate construction[2] reorders the words in the term without providing any clarification. Defendants' proposed construction improperly reads out the element of a "mode."

### V. U.S. Patent No. 7,336,531

A. *"a memory array comprising a plurality of memory cells organized into memory blocks"*

The term "a memory array comprising a plurality of memory cells organized into memory blocks" in asserted claims 7 and 10 does not require construction. The parties' substantive dispute centers on Defendants' proposed clause, "with each memory block adapted to operate in either a multiple level cell mode or a single bit per cell mode." The parties do not dispute that at least some memory blocks in the array are "switchable" between multiple and single modes, and that at least one block is a dedicated block that operates only in a single density mode. The issue is whether all of the blocks, other than the dedicated single density mode block, must be switchable, as Defendants' proposed limitation requires.

Defendants point to the Summary, which provides that embodiments "encompass" a plurality of blocks, where "[e]ach memory block is adapted to operate in either a multiple level

---

[2] For the first time at oral argument, Plaintiff offered a new construction: "setting the device to a mode for low current consumption." (No. 11-1011, D.I. 83 at 85, 87-88).

cell mode or a single bit per cell mode," and to disclosure providing, "The flash memory of the present invention is comprised of memory blocks that can each be configured to store data in different densities." Col.1 l.67 - col.2 l.2; col.6 ll.22-25. Plaintiff points to claim 1, which claims memory blocks limited according to Defendants' proposed limitation as a subset of a plurality of memory blocks, and compares it to the claim term here and asserts that under the doctrine of claim differentiation, the terms must mean something different. Col.6 ll.60-66. Claim 11 claims a plurality of memory cells including the dedicated error free block and "the remaining memory blocks" being switchable. Col.7 ll.40-46. In other words, claim 1 claims a plurality of blocks, containing a switchable *subset* of blocks and at least one dedicated error free block, while claim 11 claims a plurality of blocks, *all but one of which* are switchable.

Under the doctrine of claim differentiation, claims 1, 7, and 11 must mean something different. *See Nystrom v. Trex Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2006). Adopting Defendants' limitation would render claim 7 and claim 11 indistinguishable; this is improper. Further, the specification and claim 1 disclose a subset of blocks that *can be* configured to store data in different densities. Col.6 ll.22-25. The plurality of switchable blocks "encompassed" by the summary of the invention may be part of an even larger plurality. *See* col.1 l.67 - col.2. l.2. It is improper to limit this claim term to require all blocks other than the dedicated error free block be switchable.

> B. *"at least one dedicated error free memory block that operates only in a single density mode"*

The term "at least one dedicated error free memory block that operates only in a single density mode" does not require construction. Defendants' proffered construction for the most

part reorders the words in the term or provides synonyms that are not helpful to the jury (*e.g.*, substituting "designated" for "dedicated,""with no defective memory cells" for "error free," and "store[s] only one bit per cell" for "operates only in a single density mode).

Defendants also propose the limitation that the memory block be "configured not to be changed" based on the specification's description that the memory block is "permanently designated," asserting that the memory block is selected at the factory and not changed after a factory quality check. *See* col.4 ll.32-39. In fact, the specification provides that the block can be changed "during the manufacturing process or at another time." Col.6 ll.12-15; Fig.5. There is no support for Defendants' proposed limitation that the memory block dedicated to operate only in a single density mode be "configured not to be changed."

## VI. U.S. Patent No. 7,285,979

### A. *"resistive terminations"*

The term "resistive terminations" is construed to mean "termination using one or more resistors." The parties rely on different interpretations of the same section of the specification. *See* col.8, ll.23-41. Plaintiff points to the sentence providing that the "on-die termination" ("ODT") switches use ODT resistors to provide resistive termination, and then points to the later sentence providing "the ODT can use impedance devices such as transistors to replace or supplement" those resistors. Plaintiff argues these sentences indicate that resistive termination can be achieved by types of components other than resistors. At oral argument, Plaintiff conceded that "resistive termination" is narrower than "termination," but provided no basis for distinguishing the two. (No. 11-1011, D.I. 83 at 131-32).

Defendants assert that col.8, ll.23-41 differentiate "resistive termination" and "alternative

8

arrangements" for termination provided by "impedance devices," and argue that termination provided by means other than resistors, *e.g.*, impedance devices, is not resistive termination. Indeed, some claims (1, 13) claim "termination" without mentioning resistors, while the asserted claims (33, 34, and 36) specify "resistive termination" and claim resistors. Defendants also argue impedance devices are a broader category than resistors. *See* col.8 ll.25-26, 39-41.

To properly differentiate the claim terms "resistive termination" and "termination," and in light of the specification's distinguishing between "resistive termination" and termination provided by impedance devices at col.8, ll.23-41, the term is construed to mean "termination using one or more resistors."

Entered this 21st day of June, 2013.

*Richard G. Andrews*
United States District Judge